Austin M. Katz and Betty K. Katz v. Commissioner.
Katz v. Commissioner
Docket No. 2054-69 SC
United States Tax Court
T.C. Memo 1970-116; 1970 Tax Ct. Memo LEXIS 244; 29 T.C.M. (CCH) 511; T.C.M. (RIA) 70116; May 18, 1970, Filed Austin M. Katz, pro se, 140 Elizabeth Lake Rd., Pontiac, Mich., James C. Lynch, for the respondent. 512 WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency has been determined by the Commissioner in the income tax of petitioners for the taxable year 1965 in the amount of $630.81. The only issue to be decided is whether respondent has erred in disallowing as an exclusion from petitioners' gross income an amount alleged by petitioners to have been a scholarship grant under section 117, I.R.C. 1954. Findings of Fact The facts which have been agreed upon by stipulation are found as fact. At a time the petition was filed, the petitioners' residence was at Pontiac, Michigan. Austin M. Katz (hereinafter referred to as the petitioner) filed a joint return with his wife Betty K. Katz for the *245 taxable year 1965 with the district director of internal revenue at Detroit, Michigan. The petitioner's wife is a party to this action only for the reason that she filed a joint return with the petitioner. Petitioner graduated from the University of Michigan Medical School in 1960 and was licensed to practice medicine in Michigan in 1961. From 1961 through 1963, he served as a member of the United States Navy. In August of 1963, he became a resident physician at the Pontiac State Hospital and continued in that position throughout 1964 and 1965. The Pontiac State Hospital is primarily organized to provide psychiatric treatment and services to mentally ill patients. The hospital admits patients on the basis of need for psychiatric treatment and is under the jurisdiction and control of the Michigan Department of Mental Health, which is a State agency. During the first half of the year 1965, the petitioner was assigned to work at the Lafayette Clinic in Detroit, Michigan. The Lafayette Clinic is also an agency of the State of Michigan and it is primarily designed to provide psychiatric services to the citizens of Michigan. The petitioner in performing psychiatric services for the *246 Pontiac State Hospital and for the Lafayette Clinic was under constant supervision and was assigned to duties as his superiors saw fit. The petitioner was an employee of the State of Michigan. As an employee of the State of Michigan, he was entitled to civil service benefits. The payments received by him from the State were not based upon any financial need. He received his salary on a bi-weekly basis and also received regular salary increases. No part of his salary was designated by the State in any way as a "fellowship" or "fellowship grant." The petitioner conducted admission procedures for new patients at the Pontiac State Hospital and was assigned patients for whom he was responsible for psychiatric treatment and the prescription of drugs. Petitioner also performed psychiatric services for the Lafayette Clinic, which services were similar to those performed by him for the Pontiac State Hospital. The Pontiac State Hospital has an inpatient capacity of 2,700 and an active outpatient program. The regular staff at the hospital was 30 physicians. The resident physicians normally processed new patients, but the staff physicians were required to assist with admissions if there *247 was such a great number to be admitted that the resident physicians could not manage by themselves. Once or twice during the year, the petitioner was called upon to give lectures to psychiatric student nurses and assisted the hospital in its effort to develop a better patient program. While working at the Lafayette Clinic, the petitioner did so under assignment by the Pontiac State Hospital. While employed at both the Pontiac State Hospital and the Lafayette Clinic, petitioner, as an incident to such employment, received regular, supervised training in psychiatry. Ultimate Findings The petitioner received a salary during 1965 from the State of Michigan as compensation for services rendered by him to the State. No portion of the salary received by the petitioner in 1965 was paid to him as a "fellowship grant." Opinion Petitioner has unilaterally allocated $3,600 of the amount paid him by the State of Michigan during 1965 as a scholarship or fellowship grant within the meaning of 513 section 117, [1] I.R.C. 1954, and has accordingly excluded that amount from his gross income for that year. *248 The only issue to be decided is whether, solely because petitioner, while rendering physician's services to Pontiac State Hospital and Lafayette Clinic, received accredited training as a psychiatrist, he is entitled to exclude any amount of his salary from the State of Michigan from gross taxable income. This issue has been settled by Ethel M. Bonn, 34 T.C. 64 (1960), and Woddail v. Commissioner, 321 F. 2d 721 (C.A. 10, 1963), affirming a Memorandum Opinion of this Court. In principle, the cases are controlling of the issue before us and upon facts considerably more favorable to the taxpayer. We find nothing in the facts before us which would require a different conclusion, and on the authority of those cases, hold that the amounts herein sought to be excluded from gross income by the petitioner are salary paid him for services rendered the State of Michigan. It follows that such amounts represent gross income which is not excludable under section 117. Decision will be entered for the respondent. Footnotes
1. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, * * *↩